HOOPER, Chief Justice
(dissenting):
I must respectfully dissent. Mr. and Mrs. Belcher sued the City of Prichard, individually and as parents and next friends of their children. The Belchers’ children were injured when a condemned structure collapsed on them. The Belchers, alleging that the City had been negligent and wanton, sued the City for a declaratory judgment and damages. The trial judge entered a summary judgment for the City, holding that the City had immunity. However, state law does not provide municipalities with immunity when the conditions described in Ala.Code 1975, § 1H7-190, are present.
Before April 12, 1989, the City had received one or more complaints that a structure located at 817-819 Lowndes Avenue was dangerous to children and that children had been playing in and around it. The structure was inspected on April 12, 1989, by the City. The same day, a notice was sent to the owner of the structure, Mr. Seibert, stating that the structure was “unsafe to the extent that it [was] a public nuisance.” The City asked Mr. Seibert to demolish the structure within 60 days and told him that if he did not do so then the City would demolish it and assess Mr. Seibert the costs.
Mr. Seibert did not demolish the structure within the 60 days and the City did not demolish the structure as it had said it would. Nearly a year and a half later, the roof over the porch of the condemned structure collapsed, crushing the Belcher children; Michael’s back was broken, and Wendy’s foot was crushed. Both children were left permanently disabled. The City then demolished the structure.
Given our prior caselaw, the question here is whether the City’s duty to demolish the structure in question was “so laden with public interest as to outweigh the incidental duty to individual citizens.” Rich v. City of Mobile, 410 So.2d 385, 387 (Ala.1982) (city not liable in negligence because the duty imposed upon city plumbing inspectors is owed to the city generally, not to individual homeowners).
The broader question, however, is whether a city of the State of Alabama owes a duty to the children in that city to not allow them to be injured through the neglect, carelessness, and unskillfulness of some agent, officer, or employee of the city. In 1907, the Legislature, contemplating the exact issue before this Court today, provided that cities engaging in such neglect should be held liable. The Legislature said:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or un-skillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to *636 the attention of the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body ...
Ala.Code 1975, § 11 — 47-190. (Emphasis added.) This statute is perfectly clear. In effect, the Legislature is speaking to this Court today. It is saying: The City of Prichard does not have immunity against the Belchers’ claims because: (1) the injury to the children was suffered through the neglect and carelessness of the City; and (2) the condition of the dangerous building had been called to the attention of the City but then had been left uncorrected for an unreasonable length of time. Section 11 — 17-190 imposes liability on a city even where a mere presumption of knowledge can be established. In this case there is much more than a “presumption” that the City knew of the danger. The City had actual knowledge of the dangerous condition; the City stated in its condemnation notice that the building was dangerous and should be demolished. And, finally, the City even knew that children in the neighborhood had been playing in and around the dangerous building. It is hard to imagine a case so clearly demonstrating the duty that the Legislature imposed upon cities. The statute and its legislative intent, as applicable in this case, are incontrovertible.
Nevertheless, the Belchers have had to spend time and money to appeal their case to this Court. A majority of this Court has told them that the City has immunity and is free to allow their children to be permanently disabled. I must dissent because of my reading of § 11 — 17-190 and the case precedent surrounding that statute.
In 1975, this Court corrected its prior departure from § 11 — 17-190 and abolished the doctrine of municipal immunity. In Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), Jackson sued the City of Florence and several of its police officers for damages, based on injuries he alleged the municipality’s officers had negligently or willfully inflicted on him during and after his arrest. The majority in Jackson admirably conceded that the Court had previously disregarded the intent of the Legislature and said that they would now “let the will of the Legislature, so long ignored, prevail.” 294 Ala. at 599, 320 So.2d at 74. The clear legislative intent behind § 11-47-190 had been long ignored; it was time for the Court to cease twisting the law, and the majority’s ruling in Jackson let the clear will of the Legislature prevail.
However, seven years later, in 1982, a majority of this Court carved into the laudable 1975 Jackson decision, again ignoring the will of the Legislature and the clear meaning of § 11-47-190. This Court held in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982), that the City of Mobile could not be held liable for its negligent inspection of sewer lines because the City did not have a duty to the specific individuals who were injured. The Court held that cities have immunity for “those public service activities of governmental entities ... so laden with the public interest as to outweigh the incidental duty to individual citizens.” 410 So.2d at 387-88. What is an activity “so laden with the public interest as to outweigh the incidental duty to individual citizens”? What activity by a city is not “laden with the public interest”? What is the public but a group of individual citizens? I do not think the Belchers will find much comfort in learning that the City’s caring for their children’s safety and welfare is a mere “incidental duty” and that the City has much more important “public interest[s]” to concern itself with. The balancing of the City’s “public interest” and the City’s duty to individual citizens is completely unworkable. The Rich Court’s rationale makes a distinction without a difference.
The Rich Court admitted to its departure from the intent of the Legislature and attempted to justify that departure. It wrote:
“We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule [the Court was announcing for the application of § 11 — 47-190] with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to *637 evolve through the judicial process of trial and review on a case by ease basis.”
410 So.2d 385, 387. (Emphasis added.) This case-by-case review has quickly gotten off track. It was not wise to “allow [the Rich rule for applying § 11-47-190] to evolve through the judicial process of trial and review on a case by case basis.” It was not wise, because Rich’s loose rationale has led this Court down the path to the decision it makes today. The majority’s decision today makes it clear that § 11-47-190 will henceforth have practically no effect. I find it difficult to conceive of a case in which § 11-47-190 would ever apply to allow municipal liability after the majority’s decision in this ease.
In 1991, this Court added to the problem created by Rich. In Hilliard v. City of Huntsville, 585 So.2d 889 (Ala.1991), the personal representative of the estates of persons who had died in an electrical fire sued the City of Huntsville, alleging a nuisance and alleging negligence and/or wantonness in the inspection of wiring in an apartment complex. This Court held that the City had not owed a duty to the fire victims because, “[w]hile individuals receive a benefit from these inspections, that benefit is merely incidental to the benefit derived by the citizens in general.” 585 So.2d at 891.
The Court today relies solely on Rich and Hilliard, yet those cases are not on point. Rich and Hilliard both dealt with negligent inspections. The Belchers’ action is not based on a theory of negligent inspection. The City and the Belchers agree that the inspection was not negligent. The Belchers’ action is based on the simple theory laid out in § 11-47-190. They rely on § 11-47-190 in contending: (1) that the City was put on notice that the building was dangerous; (2) that the City agreed that the building was dangerous; (3) that the City said it would demolish the building; (4) that the City failed to demolish the building for nearly a year and a half after it had said it would; and (5) that as a direct and proximate result of the City’s failure to demolish the building, the Belcher children were permanently disabled.
This Court said in Rich that its decision in that case was a “wise” one. A good man once said “wisdom is justified by her children.” The children of Rich have continued to carve away at the legislative remedy provided by § 11-47-190, and today’s child— Belcher v. City of Prichard — has effectively laid an ax to the statute. Rich’s self-proclaimed wisdom is not evidenced by today’s case. The Belcher children, as well as every other child in this state, deserve better from our cities.
Anyone who accepts the rationale of the majority’s decision should read § 11-47-190 and then apply it to the facts before this Court today. I think it clear that the Legislature intended for a city that acted in the manner in which the City of Prichard is alleged to have acted to be liable for harm caused by its neglect.
A trial would determine whether the City of Prichard should be held liable under § 11-47-190. That trial will not take place now that this Court has defeated the potential liability clearly imposed upon municipalities by the Legislature.
Therefore, I must dissent.